UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY, ET AL. | CIVIL ACTION |
| VERSUS | NO. 19-10525 C/W 19-10925, 19-11813, AND 19-12748 |
| M/T AMERICAN LIBERTY, HER ENGINES, TACKLE, APPAREL, ETC., IN REM | SECTION "R" (4) |

## **ORDER AND REASONS**

The Court has received a motion to bifurcate the limitation proceedings from claimants Clement Bell, Ryheme Knighten, and Robert Sayles.[1] Under Rule 42(b), the Court grants the motion.

### **I.    BACKGROUND**

This case arises from a maritime casualty on the Mississippi River.[2] On May 16, 2019, the M/T AMERICAN LIBERTY, an oil/chemical tanker, owned by American Petroleum Tankers X, LLC, and owned *pro hac vice* by

---

1   R. Doc. 89.
2   *See generally* R. Doc. 18 at 3-4 ¶ 8.

Crowley Global Ship Management, Inc.,[3] left a dock in Garyville, Louisiana.[4] The tugboat M/V JOSEPHINE ANNE, owned by Bisso Offshore, LLC, and owned *pro hac vice* by E.N. Bisso & Son, Inc.,[5] was assisting the AMERICAN LIBERTY in her turn to sea.[6] Soon after leaving her berth, the AMERICAN LIBERTY allegedly "lost control and/or lost engine power."[7]

As a result, the AMERICAN LIBERTY allided with the M/V AFRICAN GRIFFON,[8] which was moored and loading cargo at the Cargill grain facility.[9] The AMERICAN LIBERTY also allided with two barges moored alongside the AFRICAN GRIFFON, a hopper barge and the DON D,[10] a crane barge owned and operated by Associated Terminals, LLC, and Associated Marine Equipment, LLC.[11] Several workers on the DON D allegedly were injured during the allision and its aftermath.[12] This allision caused the DON D and the hopper barge to break loose from the AFRICAN GRIFFON, at

---

[3]  *See id.* at 2 ¶ 5; R. Doc. 1 at 1 (Case No. 19-10925).
[4]  *See* R. Doc. 18 at 3 ¶ 8; R. Doc. 1 at 2 ¶ 6 (Case No. 19-10925).
[5]  *See* R. Doc. 1 at 2 ¶¶ 4-5 (Case No. 19-11813).
[6]  *See id.* at 2 ¶ 7.
[7]  *See* R. Doc. 18 at 3 ¶ 8.
[8]  *See* R. Doc. 18 at 3 ¶ 8; *see also* R. Doc. 14 at 2 ¶ 5.
[9]  *See* R. Doc. 14 at 2 ¶ 5.
[10]  *See id.* at 2-3 ¶ 5; R. Doc. 18 at 3 ¶ 8.
[11]  *See* R. Doc. 1 at 1 (Case No. 19-12748).
[12]  *See* R. Doc. 26 at 3-4 ¶¶ 6-9; R. Doc. 56 at 11 ¶¶ 6-7; R. Doc. 136 at 11 ¶¶ 7-8.

which point the DON D and the barge also began to "travel down river out of control."[13]

The AMERICAN LIBERTY, the DON D, and the hopper barge all allided with Archer Daniels Midland Company's elevator grain facility in Reserve, Louisiana.[14] At the time, the M/V EVER GRACE, chartered by ADM International Sàrl, was loading cargo there.[15] The facility and the EVER GRACE allegedly suffered damage from the allision.[16] Finally, the vessels allided with a fleet of stationary barges located near the ADM facility, which were owned by American River Transportation Co., LLC.[17] This allision allegedly "caus[ed] damages to several ARTCO barges, wires, rigging, and require[ed] rescue efforts and tug assistance."[18]

Following the allisions, claimants Bell, Knighten, and Sayles filed personal injury actions in state court against American Petroleum Tankers, LLC; American Petroleum Tankers Parent, LLC; Kinder Morgan, Inc.; Crowley Marine Corporation; and Intrepid Personnel & Provisioning, Inc., as the owners, operators, managers, and crew providers of the AMERICAN

---

[13]  *See* R. Doc. 18 at 3 ¶ 8.
[14]  *See* R. Doc. 18 at 3 ¶ 8.
[15]  *See id.*
[16]  *See id.*
[17]  *See id.* at 2 ¶ 4, 3 ¶ 8.
[18]  *See id.* at 3 ¶ 8.

3

LIBERTY;[19] against E.N. Bisso & Son, Inc., and Bisso Offshore, LLC, as owners, operators, and managers of the JOSEPHINE ANNE;[20] against Associated Marine Equipment, LLC, as the owner and operator of the DON D;[21] and against Associated Terminals, Limited Liability Company, as their Jones Act employer.[22]

ADM, the operator of the damaged grain elevator facility, and ARTCO, the owner and operator of the damaged stationary barges, filed suit in this Court against the AMERICAN LIBERTY, *in rem*, for economic loss.[23] Other economic loss claims were later filed by dock owners[24] and various insurers[25] and vessel interests.[26]

In response to the claims filed, the owners of the AMERICAN LIBERTY, the JOSEPHINE ANNE, and the DON D each filed actions for limitation of liability,[27] which were consolidated before this Court.[28] In each

---

[19] *See* R. Doc. 89-2 at 4 ¶ 16.
[20] *See id.* at 5 ¶ 18.
[21] *See id.* at 5 ¶ 17.
[22] *See id.* at 4 ¶ 15.
[23] *See* R. Doc. 1 at 1, 1 ¶ 2, 2 ¶ 3, 3 ¶¶ 7-8.
[24] *See, e.g.*, R. Doc. 50 at 8 ¶ 1, 9 ¶ 7.
[25] *See, e.g., id.* at 8 ¶ 2; R. Doc. 119 at 1, 6 ¶ 20.
[26] *See, e.g.*, R. Doc. 34 at 4, 5-6 ¶ VIII; R. Doc. 53 at 7 ¶¶ 1-2, 10-11 ¶ 15; R. Doc. 72 at 1, 9 ¶ 9.
[27] *See* R. Doc. 1 (Case No. 19-10925); R. Doc. 1 (Case No. 19-11813); R. Doc. 1 (Case No. 19-12748).
[28] *See* R. Doc. 28; R. Doc. 32; R. Doc. 85.

action, a restraining order was entered, enjoining proceedings outside this one.[29]

Now, three personal-injury claimants seek to bifurcate the limitation proceedings.[30] The motion is supported in part by Bisso & Son/Bisso Offshore,[31] ADM/ADM International/ARTCO,[32] and Port of South Louisiana/Certain Underwriters at Lloyd's, London.[33] Associated Marine/Associated Terminals[34] and American Petroleum/Crowley[35] oppose the motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(b), a district court "may order a separate trial" of any issue or claim "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed R. Civ. P. 42(b); *see also Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994); *Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995). The rule leaves the decision to order the

---

[29] *See* R. Doc. 6 at 2-3 ¶ 5 (Case No. 19-10925); R. Doc. 4 at 3 ¶ 5 (Case No. 19-11813); R. Doc. 4 at 3 ¶ 6 (Case No. 19-12748); *see also* R. Doc. 133 at 7-8 ¶ 6.
[30] R. Doc. 89.
[31] *See* R. Doc. 102.
[32] *See* R. Doc. 103.
[33] *See* R. Doc. 114.
[34] *See* R. Doc. 105.
[35] *See* R. Doc. 108.

5

separation of a particular issue in the sound discretion of the Court. *See Conkling*, 18 F.3d at 1293*; O'Malley v. U.S. Fidelity & Guar. Co.*, 776 F.2d 494, 500 (5th Cir. 1985); *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 114 (E.D. La. 1992) ("[C]ourts have repeatedly emphasized that whether to bifurcate a trial . . . is always a question committed to the sound discretion of the trial court, and the court is expected to exercise its discretion on a case-by-case basis."). Bifurcation is appropriate when the separation of issues will "achieve the purposes" of Rule 42(b). *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. Aug. 2019 update).

That said, "separate trials should be the exception, not the rule." *Laitram*, 791 F. Supp. at 114; *see also McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993) ("Separation of issues, however, is not the usual course that should be followed."). Indeed, "the Fifth Circuit has . . . cautioned district courts to bear in mind before ordering separate trials in the same case that the 'issue to be tried [separately] must be so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Laitram*, 791 F. Supp. at 115 (alteration in original) (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)). In sum, courts must consider the justifications for bifurcation in relation to the facts of the individual case,

6

giving particular consideration to the avoidance of prejudice, in order to determine if a separate trial is appropriate. *See Laitram*, 791 F. Supp. at 114-15 (noting that when determining whether to bifurcate, a court "must balance the equities" and "exercise its discretion on a case-by-case basis").

### III.  DISCUSSION

The Court finds that bifurcating the trial achieves the purposes of Rule 42(b). Bifurcation can economize and expedite the proceedings. The limitation proceedings require the Court to determine first whether shipowner liability exists, and second, whether the shipowner had privity or knowledge of relevant acts of negligence or unseaworthiness. *See Cupit v. McClanahan Contractors, Inc.*, 1 F.3d 346, 348 (5th Cir. 1993); *see also* 46 U.S.C. § 30505 (permitting vessel owners without "privity or knowledge" to limit liability to "the value of the vessel and pending freight"). These questions require the Court to engage in a more limited inquiry than it would in a trial that also included quantification of multiple parties' damages claims. Furthermore, liability issues will overlap across the three limitation proceedings, and the Court can coordinate discovery on liability and privity and knowledge issues to promote an expedited pretrial schedule and trial. Damages issues, on the other hand, will involve separate and potentially

complicated questions, such as the economic complexities of large property-loss claims. Indeed, more than one party argued that discovery and the determination of economic losses would be especially protracted because high water conditions will complicate their ability to make repairs and quantify their losses.[36] Resolving the limitation issues first will enable the Court to decide the core issues driving the litigation expeditiously, and may eliminate the need for a trial of some or all damages issues as a result of settlements or rulings on the merits.

Bifurcation will also help to avoid prejudice by preserving the claimants' ability to seek a jury trial on damages if limitation is denied. *See Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir. 1960) (noting claimants' "apprehension that . . . [they] will be irrevocably denied their right to jury trials," but stating that "the admiralty court in its decree denying the right to limitation can make certain that [claimants] are free to pursue the petitioner in any other forum having requisite jurisdiction"). Indeed, the Fifth Circuit has recognized the "'recurring and inherent conflict' between the exclusive jurisdiction vested in admiralty courts by the Limitation of Liability Act and the common law remedies embodied in the saving to suitors clause of 28 U.S.C. § 1333." *Texaco, Inc. v. Williams*, 47

---

[36] *See* R. Doc. 143 at 4-6.

F.3d 765, 767 (5th Cir. 1995) (citations omitted) (quoting *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 754 (2d Cir. 1988)). But "[b]ifurcation has proved to be an effective tool to help ease the conflict" and accommodate "the presumption in favor of jury trials . . . embodied in the 'savings to suitors' clause." *In re Suard Barge Serv., Inc.*, No. 96-3185, 1997 WL 358128, at *2 (E.D. La. June 26, 1997) (quoting *In re Bergeron Marine Serv., Inc.*, No. 93-1845, 1994 WL 236374, at *1 (E.D. La. May 24, 1994)).

Bifurcating this proceeding is consistent with the approach taken by other courts. "[N]umerous courts within the Fifth Circuit have deemed it appropriate to defer ruling on issues ancillary to the limitation proceeding until after limitation was decided." *In re Miss. Limestone Corp.*, No. 4:09-CV-00036-SA-DAS, 2010 WL 4174631, at *3 (N.D. Miss. Oct. 7, 2010); *see, e.g.*, *In re Torch, Inc.*, No. 94-2300, 1996 WL 512303, at *1 (E.D. La. Sept. 6, 1996) (stating that "[t]he case was bifurcated for trial and the only issues tried to the Court were whether the plaintiffs in limitation are entitled to exoneration and, if not, whether they are entitled to limitation"), *aff'd sub nom.*, *Torch, Inc. v. Alesich*, 148 F.3d 424 (5th Cir. 1998). Indeed, one court observed that bifurcation "appears [to be] the preferred approach, at least within federal district courts of the Fifth Circuit." *Miss. Limestone Corp.*,

9

2010 WL 4174631, at *3 (quoting *In re Athena Constr., LLC*, No. CIV A 06-2004, 06-2336, 2007 WL 1668753, at *6 (W.D. La. June 6, 2007)).

Here, the Court will try liability, limitation, and apportionment of fault in the same proceeding. Although plaintiffs seek to have apportionment of fault decided in the separate damage phase,[37] the Court finds this inefficient. As the major actors will be before the Court in the limitation trial, and the Court will receive evidence permitting it to rule on apportionment issues at the same time it rules on liability and limitation, combining the apportionment determination is consistent with Rule 42.

The opponents raise a variety of objections to bifurcation, but especially focus on the movants' failure to provide any stipulations.[38] In *Odeco Oil & Gas Co., Drilling Division v. Bonnette*, 74 F.3d 671 (5th Cir. 1996), the Fifth Circuit said:

> [F]ederal courts have developed two instances in which a district court must allow a state court action to proceed: (1) when the total amount of the claims does not exceed the shipowner's declared value of the vessel and its freight, and (2) when all claimants stipulate that the federal court has exclusive jurisdiction over the limitation proceeding, and that the claimants will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the federal court.

---

[37]   *See* R. Doc. 89-1 at 4.
[38]   *See, e.g.*, R. Doc. 105 at 14; R. Doc. 108 at 9.

*Id.* at 674 (emphasis omitted). The opponents argue that bifurcation is not appropriate, as the movants have not provided the type of stipulations required by *Odeco*.[39] But the movants do not ask to proceed in state court simultaneously with the limitation proceeding; nor do they threaten the Court's exclusive jurisdiction over limitation issues.[40] And as the shipowners' rights to limitation will be decided first while claimants' state court cases are stayed, claimants will not be able to seek to enforce a damage award in excess of the limitation fund before limitation rights are adjudicated. Thus, the Court can protect the vessel owners' limitation rights by trying limitation first and freeing claimants to seek damages in state court only if limitation is denied.

---

[39] *See, e.g.*, R. Doc. 105 at 17; R. Doc. 108 at 9.
[40] *See, e.g.*, R. Doc. 127 at 2 (movants' reply memorandum arguing that "[d]epending upon the outcome of the limitation proceeding, other matters may then be delegated to a state-court determination or a second phase of trial").

11

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to bifurcate. The Court will try the issues of liability, limitation, and apportionment of fault in a bench trial. Damages will be tried separately.

New Orleans, Louisiana, this __16th__ day of April, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE