UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY d/b/a ADM GRAIN COMPANY, ADM INTERNATIONAL SÀRL and AMERICAN RIVER TRANSPORTATION CO., LLC | CIVIL ACTION NO.: 19-cv-10525 c/w 19-cv-10925 & 19-cv-11813 SECTION L \| DIVISION 1 |
| VERSUS | JUDGE FALLON |
| M/T AMERICAN LIBERTY, her engines, tackle, apparel, etc., *in rem* | MAGISTRATE VAN MEERVELD RE: 19-cv-10925 |

**CROSS CLAIM AGAINST MARATHON PETROLEUM COMPANY LP IN LIMITATION AND SUPPLEMENT TO RULE C COMPLAINT**

Claimants Archer Daniels Midland Company d/b/a ADM Grain Company, ADM International Sàrl, and American River Transportation Co., LLC (hereinafter collectively "ADM") re-allege and re-aver all allegations of their Claims in Limitation against Petitioners in Limitation American Petroleum Tankers X, LLC and Crowley Global Ship Management, Inc. as fully and completely as if copied herein, and further re-allege tort allegations of its Original Complaint against the M/T AMERICAN LIBERTY IN REM under rule C, as fully and completely as if copied herein in extenso, and now supplement its claims to file this *Claim Against Marathon Petroleum Company LP* ("Marathon") in 19-cv-10525 and the limitation action filed on behalf of American Petroleum Tankers X, LLC ("APTX") and Crowley Global Ship Management, Inc. ("Crowley") and aver as follows:

**First Cause of Action:**

**1.**

Plaintiff in the Rule C Complaint bearing cause number 19-cv-10525 and also Claimant-In-Limitation Archer Daniels Midland Company d/b/a ADM Grain Company appeared and

1

answered the above referenced limitation actions; and is a corporation organized under the laws of Delaware with a principal place of business in Illinois. It is authorized to and is doing business in Louisiana.

**2.**

Plaintiff in Civil Action 19-cv-10525 and Claimant-In-Limitation ADM International Sàrl ("ADMI") appeared and answered limitation actions and ADMI is a foreign corporation organized and exists under the laws of Switzerland. It maintains its principal place of business in Rolle, Switzerland.

**3.**

Plaintiff in Civil Action 19-cv-10525 and Claimant-In-Limitation American River Transportation Co., LLC, (hereinafter "ARTCO") already appeared and answered limitation actions, and is a company organized and existing under the laws of Delaware. ARTCO's principal place of business is in Illinois.

**4.**

Marathon appeared and recently answered certain limitation actions herein and sought affirmative relief as claimant to the limitation funds. Marathon is a limited partnership organized under the laws of Delaware and licensed to do and doing business in Louisiana.

**5.**

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based on 28 U.S.C. § 1333 and 46 U.S.C. § 30101 and maritime tort.

**6.**

Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(b) and because the acts and omissions of Marathon took place in material part in this district and because Marathon has voluntarily appeared in this court, obtained the court's permission to file late claims by which Marathon seeks to capture for itself a portion of the limitation fund despite its late filing to the detriment of ADM, ARTCO and ADMI, and asked for other affirmative relief from this court.

**7.**

ADM operates a grain elevator facility near Reserve, Louisiana, Mile Marker 139 AHP Lower Mississippi River. This facility contains a dock and loading equipment used to load ocean going vessels with grain cargo.

**8.**

ARTCO owns and operates the subject dry cargo barges located in a barge fleet near the ADM grain elevator facility in Reserve, Louisiana (hereinafter "the ARTCO fleet").

**9.**

On or about the evening of May 16, 2019, the M/T AMERICAN LIBERTY ("Vessel") completed cargo loading operations and departed southbound from Marathon's Garyville berth at or near Mile Marker 140 AHP Lower Mississippi River. Shortly after, the Vessel lost control attempting to turn downriver after it departed from its passage plan, causing it to allide with M/V AFRICAN GRIFFIN, crane barge DON D, and a hopper barge connected thereto, Ever Grace and the ARTCO barge fleet. The DON D and hopper barge were knocked off the M/V AFRICAN GRIFFIN.

**10.**

The Vessel, the DON D, and the hopper barge traveled downriver, out of control and without engine power. They allided with M/V EVER GRACE, ADM's grain facility at Reserve, Louisiana and ARTCO's barge fleet. At the time, the EVER GRACE was chartered by ADMI and scheduled to transport a cargo of soybeans to an ADM vegetable oil processing facility in Europe. The damage to the EVER GRACE and delay in cargo delivery required ADMI to source a replacement of soybean cargo out of Brazil at a significantly higher price.

**11.**

Marathon entered a long-term time charter with Limitation Petitioner, APTX on January 6, 2017 for charter of the Vessel, before the Vessel was built.

**12.**

Marathon owned or operated and controlled the dock in Reserve, Louisiana from which the Vessel departed just prior to its loss of control and resulting allision on May 16, 2019.

**13.**

Marathon owned the cargo aboard the Vessel before during and throughout the voyage including at the time of the allision on May 16, 2019 and was interested in the timing of its delivery to the Marathon terminal in Tampa, Florida as well as clearing the dock for the next vessel scheduled to arrive at Marathon Reserve.

**14.**

Marathon owned and operated or controlled the dock and terminal in Tampa, Florida which was the destination of the Vessel and cargo at the time of the allision on May 16, 2019.

**15.**

Marathon and the Vessel crew employed by Crowley jointly controlled the timing and scheduling of the Vessel's departure from the Marathon dock in Reserve at night at high river on May 16, 2019.

**16.**

Prior to the day of the allision, the New Orleans and Baton Rouge Steamship Pilots Association ("NOBRA Pilots") issued a "daylight only transit restriction" applying to southbound vessels from Mile 233.0 AHP to Mile 90.5 AHP due to the danger of turning vessels down bound at night at high river, to prevent the type of allision that happened to the Vessel. This advisory known to the Vessel captain, remained in effect on the night of the accident. The Marathon dock at Reserve was within this reach of the river where NOBRA pilots refused to turn ships to sea at night due to safety concerns. The ship used a federal pilot instead who faced the same navigational risks.

**17.**

Immediately prior to the accident, the Vessel departed from Marathon's Garyville berth and turned southbound at night near mile 139 AHP at high river.

**18.**

Marathon and limitation claimant Crowley jointly had operational control over the departure time of the AMERICAN LIBERTY from the Marathon Garyville berth on May 16, 2019.

**19.**

The Vessel sailed from the Marathon berth in unsafe, high-river conditions on the night in question and the accident occurred as a result of loss of control of the vessel at the time of the turn to sea from the Marathon dock, a maneuver from which it never recovered.

**20.**

Marathon knew the sailing schedule of the Vessel so it could coordinate berthing of the next ship at Marathon's dock at Reserve and arrival of the Vessel at destination in Tampa for distribution of Marathon's cargo.

**21.**

The negligence of Marathon was in whole or in part a cause of the allision jointly with ATPX and Crowley turning the Vessel off the dock in the Mississippi River at night in high river, when the captain and crew did not have sufficient training or knowledge of restrictions on the main engine automation controls to needed to overcome the automation system parameters limiting the ship's propulsion as follows. Accordingly, propulsion limiting programs were not disabled, nor were they disclosed to the federal pilot who was unaware of the limitations, a violation of a USCG safety advisory.

**22.**

The captain and crew of the Vessel were unaware of the precise parameters of the main engine automation system which reduced the available revolutions of the ship's main engine or how to timely overcome those parameters before losing steerage in strong current at night on the night of the allision.   This was a failure to train that contributed to the accident.

**23.**

A significant contribution factor to the allision was the crew did not know the details of the parameters of the main engine automation system which reduced the available revolutions of the propeller of the ship's main engine. The crew should have been taught how to overcome the parameters and release propulsion limits.

**24.**

Marathon was aware of the Vessel's main engine had an automation system. The parameters restricted the flow of fuel to the slow speed diesel main engine of the Vessel to reduce air emissions and save fuel costs. Marathon, as Time Charterer, paid for the fuel for operating the vessel leading up to and during the voyage in question. Marathon paid less fuel cost due to the imposition or presence of the parameters that restricted flow of fuel to the main engine so masters and navigation officers were not taught how to automatically overcome the parameters which created a financial fuel savings cost to Marathon but created a risk of catastrophic accidents should vessel encounter fast currents at night in the Mississippi River.

**25.**

The claims against Marathon are not subject to any Limitation of Liability defense because Marathon acted outside the scope of a vessel operator and because Marathon had privity and knowledge of the contributing factors that caused of the accident.

**26.**

As a result of the allision, ADM suffered extensive damages, including increased expenses. These include repair costs, survey expenses, contractor expenses, loss of use, loss of profit, business interruption and other damages.

**Second Cause of Action: Declaratory Judgment**

**27.**

ADM, ARTCO and ADMI are claimants to the fund submitted in connection with the filing of this Limitation of Liability action.

**28.**

The claim of Marathon includes contractual liability claims by Marathon against APTX.

**29.**

Contractual liability claims are not subject to limitation and should not reduce the limitation fund available to ADM, ARTCO and ADMI.

**30.**

The court should issue declaratory relief in favor of ADM, ARTCO, and ADMI declaring that the contractual liability claims are not subject to limitation, and no part of the limitation fund will be reduced due to Marathon's contractual liability claims against APTX regardless of whether those claims are successful.

**WHEREFORE**, ADM prays that:

1. Process in due form of law be issued directing Marathon to appear and answer all allegations contained herein;
2. After due proceedings be had, ADM have judgment against Crowley, APTX and Marathon, jointly severally and in solido, in the full amount of ADM's damages, including interest thereon at the legal rate, and for any other and further amount deemed appropriate;
3. That the claims of Marathon against all limitation funds be dismissed; and

4. ADM, ARTCO and ADMI have such other and further relief as the law and equity require.

          Respectfully submitted:

          SALLEY, HITE, MERCER & RESOR, LLC

          */s/ David M. Flotte*
          DAVID M. FLOTTE, T.A. (#1364)
          MARCELLE P. MOULEDOUX (#30339)
          KEVIN M. FREY (#35133)
          AUSTIN S. GLASCOE (#38236)
          MORGAN E. KELLEY (#38299)
          365 Canal Street, Suite 1710
          New Orleans, LA  70130
          Tel.: (504) 566-8800
          Fax: (504) 566-8828
          dflotte@shrmlaw.com
          mmouledoux@shrmlaw.com
          kfrey@shmrlaw.com
          aglascoe@shmrlaw.com
          mkelley@shmrlaw.com

          *Counsel for Archer Daniels Midland Company d/b/a ADM Grain Company, ADM International Sàrl, and American River Transportation Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2021 I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all persons electronically noticed.

          */s/ David M. Flotte*
          DAVID M. FLOTTE