UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY d/b/a ADM GRAIN COMPANY, ADM INTERNATIONAL SÀRL and AMERICAN RIVER TRANSPORTATION CO., LLC | CIVIL ACTION NO.: 19-cv-10525 c/w 19-cv-10925 & 19-cv-11813 |
| | SECTION L \| DIVISION 1 |
| VERSUS | JUDGE FALLON |
| M/T AMERICAN LIBERTY, her engines, tackle, apparel, etc., *in rem* | MAGISTRATE VAN MEERVELD |
| | **RE: All Cases** |

## ADM ENTITIES' OPPOSITION TO MARATHON'S MOTION FOR SUMMARY JUDGMENT, REC. DOC. 393

MAY IT PLEASE THE COURT:

Archer Daniels Midland Company d/b/a ADM Grain Company, ADM International Sàrl, and American River Transportation Co., LLC (collectively referred to as "ADM Entities") oppose the *Motion For Summary Judgment*, Rec. Doc. 393, filed by Marathon Petroleum Company LP ("Marathon"). ADM Entities adopt the arguments set forth in Claimants' *Memorandum In Opposition to Marathon's Motion for Summary Judgmen*t, Rec. Doc. 439. ADM Entities further supplement as follows:

Marathon argues that "Marathon's non-involvement in the Incident was also recognized and confirmed by the various experts for the various Claimants . . ."[1] This argument is misleading. Marathon availed itself to the federal forum after expert reports were drafted and exchanged. The experts Marathon cites as "confirming" Marathon's alleged "non-involvement" had little-to-no information on the extent of Marathon's involvement when they were developing their opinions. Possessing no information is different from information failing to exist. ADM Entities want to

---

[1] Rec. Doc. 393, p. 5.

make that distinction clear. The expert testimony cited by Marathon in its Motion for Summary Judgment was elicited in March 2021. This excerpted testimony seems to suggest that the experts agree Marathon had no role. These excerpts are taken out of context. Marathon answered discovery on April 12, 2021 and was only deposed on April 29, 2021. The experts Marathon quotes as being dispositive of its liability had limited or no information as to Marathon's involvement.

Substantively speaking, Marathon's involvement in the events underlying this accident is pervasive. Marathon owned the dock from which the AMERICAN LIBERTY departed minutes before the allisions. Marathon maintained a schedule of vessels transiting to and from its Garyville, Louisiana facility and had an incentive to keep traffic off its docks moving smoothly.[2] According to this schedule, Marathon expected the AMERICAN LIBERTY to depart from its dock on May 16, 2019.[3] Additionally, Marathon's agent, Nord Sud, ordered the tugs and the federal pilot for the AMERICAN LIBERTY on the night of the collisions.[4] The number of tugs used in the maneuver has been a point of contention. The type of pilot ordered has also been raised.

Marathon time chartered the AMERICAN LIBERTY from American Petroleum Tankers X ("APTX"), and the contractual obligations between the two parties are interesting.[5] The Charter Party between Marathon and APTX set forth financial penalties should the AMERICAN LIBERTY delay in delivering its cargo.[6] If the AMERICAN LIBERTY failed to complete its cargo delivery from Garyville, Louisiana to Tampa, Florida within the time permitted by the Charter Party Agreement, the AMERICAN LIBERTY interests would owe a penalty to Marathon under certain conditions.[7] Further, the AMERICAN LIBERTY interests would owe a penalty for any

---

[2] *See* Marathon Corp. Dep. 52:25—53:9, attached as Exhibit A.
[3] *Id.* at 60:15—61:5.
[4] *Id.* at 61:16—62:10.
[5] *Id.* at 94:7—94:18.
[6] *See id.* at 90:3—91:3.
[7] *Id.* at 80:18—81:13.

fuel consumed during any excess time the AMERICAN LIBERTY took to deliver cargo under certain conditions.[8]

Further, Marathon's control over the AMERICAN LIBERTY is unique, as compared to traditional roles of a time charterer. Marathon audits the AMERICAN LIBERTY's operations and procedures.[9] Marathon also audits the crew of the AMERICAN LIBERTY every six months.[10] These audits involve addressing the knowledge and experience of the crew, in addition to how the vessel is being operated.[11] Additionally, Marathon reviewed the vessel interests' operations and procedures to ensure compliance with Coast Guard regulations.[12] Once a year, Marathon would also audit the vessel management company, Crowley, and specifically review shoreside operations.[13] Marathon had the power to fire crew members aboard the vessels it time chartered and did so on another vessel operated/owned by Crowley/APTX. In that situation, Marathon fired a captain for operational incompetency.[14]

Ultimately, Marathon casts a shadow on this case, and its involvement runs deeper than it would have the Court believe. Many issues of material fact remain regarding Marathon's role, and ADM Entities request this Court deny Marathon's Motion for Summary Judgment.

---

[8] *Id.* at 89:23—91:3.
[9] *Id.* at 163:22—164:4.
[10] *Id.* at 169:21—170:10.
[11] *Id.*
[12] *Id.* at 166:9—166:17.
[13] Id. at 183:8—184:10.
[14] *Id.* at 148:3—151:19.

        Respectfully submitted:
        SALLEY, HITE, MERCER & RESOR, LLC

        */s/ Morgan E. Kelley*
        DAVID M. FLOTTE, T.A. (#1364)
        KEVIN M. FREY (#35133)
        MORGAN E. KELLEY (#38299)
        365 Canal Street, Suite 1710
        New Orleans, LA  70130
        Tel.: (504) 566-8800
        Fax: (504) 566-8828
        dflotte@shrmlaw.com
        kfrey@shmrlaw.com
        mkelley@shmrlaw.com

        *Counsel for Archer Daniels Midland Company d/b/a ADM Grain Company, ADM International Sàrl, and American River Transportation Co., LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on May 12, 2021 I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all persons electronically noticed.

        */s/ Morgan E. Kelley*
        MORGAN E. KELLEY